344 So.2d 42 (1977)
Jarysch SANSONNI et al.
v.
JEFFERSON PARISH SCHOOL BOARD.
No. 7903.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1977.
Rehearing Denied April 13, 1977.
Writ Refused June 3, 1977.
*43 Chauppette, Genin, Mendoza & Parent, Al J. Mendoza, Marrero, for Jarysch Sansonni, et al., plaintiffs-appellees.
Jack A. Grant, Gretna, and Bienvenu, Foster, Ryan & O'Bannon, Robert N. Ryan, Frederick R. Campbell, New Orleans, for Jefferson Parish School Bd. and Gulf Ins. Co., defendants-appellants.
Before REDMANN, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
This suit arises from a slip and fall accident in the cafeteria of the Marrero Middle School in Jefferson Parish. Judgment was awarded the plaintiff in the sum of $45,000 general damages and $3,518.15 special damages against the School Board and its insurer. Defendants appeal that judgment.
The uncontradicted facts are as follows: On January 24, 1973 Gary Sansonni, 13 year old son of the plaintiff, was a 6th grader at Marrero Middle School. At noon lunch period, Gary and his classmates were escorted to the school cafeteria by their teacher, Franklin Polk. At that time the cafeteria was empty of students except for a few stragglers remaining from the previous lunch period.
Mr. Polk placed Gary at the head of the line to be served lunch, and then turned his attention elsewhere because of a scuffle between other students in line. Gary proceeded through the serving line, paid for his lunch at the end of the line, and then turned and headed for the seating area. Within a few steps past the point where Gary received his lunch, Gary slipped and fell onto the cafeteria floor. It was readily apparent that Gary was injured and two other teachers were called to assist in moving Gary to the First Aid Room. From there Gary was taken to West Jefferson Hospital's Emergency Room for treatment.
The appellants argue that the trial court erred in finding that Gary slipped on a foreign substance on the floor and in imposing too great a legal duty of care. Alternately, they contend that the quantum of damages awarded is excessive and should be reduced.
Defendant-appellant, Jefferson Parish School Board, argues that it should not *44 be held to the same standard of care as a supermarket as in Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.Sup.Ct. 1976), or a self-service neighborhood grocery as in Kavlich v. Kramer, 315 So.2d 282 (La.Sup.Ct.1975), or even a country club, as in Rosensweig v. Travelers Insurance Company, La.App., 333 So.2d 334 (1976). In response we reaffirm out statement in Rosensweig at 333 So.2d 337:
"First, the trial court stated that it could not impose the same duty of care upon Vista Shores Club as is commonly imposed upon supermarkets. While it is true that the circumstances surrounding such a duty will be different, the duty remains the same. The duty imposed upon the owners of a country club holding a supper dance is the same general duty imposed upon the owners of any premises having business invitees. This duty is to use reasonable care to protect the invitees against every hazard which creates an unreasonable risk of harm. Prosser, Law of Torts, 3d Ed. §§ 401-405. This would include country clubs as well as supermarkets. As the Supreme Court recently said, "This duty includes a reasonable effort to keep objects off of the floor which might give rise to a slip and fall." Kavlich v. Kramer, 315 So.2d 282 (S.Ct.1975).
It is not the duty which changes in each case. It is the factual consideration of the risk of fall involved and the reasonableness of the measures to prevent it that differ in each case, requiring the trial judge to consider the relationship between the risk and the measures to eliminate the risk. The answer is simple when direct evidence is obtainable. It becomes difficult when circumstantial evidence must be used, as here, to establish the length of time a foreign substance remains on the floor. A plaintiff is required to establish a prima facie case of negligence on the part of the defendant, after which the burden is on the defendant to go forward with the evidence to rebut the inference of negligence. The trial judge weighs the direct and circumstantial evidence at the conclusion of the trial and determines whether the defendants' negligence is the most plausible reason for the injury.
In our case, plaintiff shows a hazardous condition being created by spaghetti sauce lying on the floor in the path of a young student occupied with carrying a tray of food. Defendant-appellant points out that only Mr. Polk, Gary's teacher (and later tutor) testified as to the presence of the spaghetti sauce (Gary did not know what he slipped on) whereas four cafeteria workers testified on behalf of the defendant that they found no food substance on the floor at the spot where Gary slipped. After reviewing the testimony of record, we can only conclude that the trial judge placed less emphasis on the credibility of the cafeteria workers than the credibility of the teacher who witnessed the accident. The trial judge is in the best position to determine the credibility of the witnesses, and his findings must be accorded great weight. They may not be disturbed upon appeal unless it is apparent that he has committed manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). We note that all of the defendant's cafeteria workers testified that they found no spaghetti sauce or food substance at the spot of his fall, nor even any food spilled from Gary's tray at the spot of the fall. None of those witnesses could explain the reason that at least Gary's tray of food or spilled food could not be found immediately after the fall.
We conclude the food substance was there, but was it there long enough to show actual or constructive notice on the defendant? For this answer the court must resort to the circumstantial evidence. It is apparent that the trial judge determined the inspection procedure of the defendants to be insufficient, and based his judgment on the lack of reasonable care.
The cleanup procedure at Marrero Middle School's Cafeteria as set forth in the workers' testimony consisted of mopping the entire dining and serving area after the three lunch periods ended, and calling a dishwasher from the kitchen to mop any reported *45 spills on the floor. This procedure did not include having a person with a duty to supervise and police the area, even though there was a sufficient number of personnel to have a person with such a duty. The cashier, who normally spots and reports food substances on the floor to be cleaned up, could not see the area where Gary Sansonni slipped and fell because her back was turned to that area.
The testimony of the witness to the accident, Mr. Polk, was that every day there was food on the floor, that he had on prior occasions reported it, but that the food was seldom cleaned up from the floor. He and other teachers felt it was useless to report spills because of the lack of action taken by the Cafeteria staff. We note that this particular area is crossed over by every student carrying the tray of food he receives in the food line. Additionally, the garbage cans where the students emptied their trays were close to the area of the fall and all witnesses testified that quite often there was food on the floor around the garbage cans. Based upon the credibility determination by the judge and these facts, we conclude this was a high risk area and more careful supervision was necessary. We agree with the finding of liability.
Defendant-appellant has raised the issue of contributory negligence. Defendants have failed to prove that Gary Sansonni was aware, or should have been aware, of the danger posed by the sauce. Gary testified that he did not see the substance and it is reasonable to conclude he could not clearly see the area in which he was walking because of the food tray which he was required to carry.
Both parties contest the quantum of damages awarded. To modify the amount of an award for general damages, an appellate court must find that the trial judge has abused the "much discretion" accorded by the Codal provisions; the awards in other cases serve only as an aid in determining whether there has been an abuse of discretion. Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971). Those cases that the defendant relies upon as a guide in reaching a reduced award are inapplicable to our case because of the nature of the injuries suffered by the plaintiff's son. Gary suffers from a congenital defect of osteogenesis imperfecta, an imperfect bone composition that renders the bones of the body unusually brittle and susceptible to fracture with a minimum of force. This condition allowed Gary's leg to break when normal children would only sustain a bruise from such a slip and fall as Gary suffered.
After the fall, Gary was hospitalized in West Jefferson Hospital for a period of 34 days, during most of which he was in traction. At the end of his hospitalization he was removed from traction and placed in a spica body cast from his navel to the bottom of his leg. He was immobilized by the body cast for a period of approximately 6 weeks until removed on April 12, 1973.
On April 19, 1973 Gary was readmitted to West Jefferson Hospital for six days for treatment of kidney stones. The testimony of the two orthopedists, Dr. Jack Winters and Dr. Hyman Soboloff and the Urologist Dr. B. R. Eubanks, was that the immobilization of Gary caused by the traction and body cast was responsible for the development of the kidney stone. It was not necessary to operate to remove it but it required several months of conservative treatment and caused Gary great discomfort.
Further, the immobilization due to the hospitalization and body cast caused Gary's back to be weakened, even by the standards of a person suffering from osteogenesis imperfecta. This weakness was a contributing factor to a probable fracture of the vertebrae in July 1973, which necessitated his wearing a back brace to relieve his back problems. Both orthopedists agree that the back brace was necessary and disagree only as to how long Gary should continue to wear the brace.
The original injury, the broken femur, healed in such a manner as to cause the left femur to be permanently bowed and both orthopedists found Gary to have one leg, the left, shorter than the other, the cause of which was contributed to by the broken *46 femur. Both orthopedic experts rendered an opinion that the shortened, bowed left leg put an unnatural strain on the left knee, and thus required the aid of the leg brace for correction.
We follow the rule of tort law set forth in Rachal v. Bankers and Shippers Insurance Company, La.App., 146 So.2d 426 (1962). "A tort feasor must take his victim as he finds him. The tort feasor is responsible for all the natural and responsible consequences of his wrong, even the consequences of the tort are made much more serious or harmful by reason of a pre-existing physical defect or weakness of the injured person."
Thus, in considering the amount awarded for general damages, we must consider the pain and suffering of Gary Sansonni as a result of the fracture, the hospitalization, traction, body cast, back pain, leg pain, the necessity of leg and back braces, the pain of the kidney stone and the attendant hospitalization, and the amount of school missed. In the light of the numerous consequences arising from the slip and fall, we cannot find the award of $45,000 to be a clear abuse of discretion.
As to the appropriateness of the special damages awarded we state only that the testimony of the doctors that treated or observed Gary Sansonni established a relationship between the items of special damage sought to be recovered and the fall suffered by Gary Sansonni at Marrero Middle School on January 24, 1973. Accordingly, the judgment appealed is affirmed.
AFFIRMED.
REDMANN, J., dissenting.
REDMANN, Judge, dissenting.
It was contributory negligence not to see and avoid the spaghetti sauce.