BOWES, Judge.
On February 19, 1986, plaintiff/appellant Reuben Boudreaux entered the Kay Bee *1196 Toy Shop at Esplanade Mall in Kenner, La. at approximately 8:30 p.m. Appellant fell while walking down an aisle, landing on his face and shoulders and sustained injuries to his back.
Plaintiff then filed suit against Melville Corporation, the alleged owner of Kay Bee Toy Shop, John Doe and Aetna Insurance Co., the liability insurer of Melville Corporation, for damages resulting from this slip and fall at the Kay Bee Toy Shop. Bou-dreaux subsequently amended his petition to name Kay Bee Toy & Hobby Shops, Inc. as a defendant.
Pursuant to a motion for summary judgment, and without objection by plaintiff, the trial court dismissed Melville Corporation as a defendant in the suit.
The case was tried by the jury. At the close of plaintiff’s case, the trial court granted a motion for directed verdict on behalf of Aetna Insurance Co.
At the end of the trial, the jury found that the defendant, Kay Bee Toy & Hobby Shops, Inc., was not negligent. In conformity with that finding, the trial court rendered judgment in favor of the defendant, dismissing plaintiff’s claims. Plaintiff appeals. We affirm.
At the trial, plaintiff testified that he went into the toy store to purchase a game. As he began to walk down the center aisle, he “stepped on something with wheels on it”, and he fell forward. Boudreaux did not present any evidence as to what the object was that he allegedly tripped over.
Kay Bee Toys presented the testimony of James Burnham, who was assistant manager of the Esplanade store at the time of the accident. He testified that he was at the other end of the aisle, 25 to 30 feet from Boudreaux, on a ladder, placing overstock of packaged bubble sets on the top shelf of the display rack. The overstock of these bubble sets were stacked two high and were lying on the floor, flush against the display rack. Approximately one inch of each pack was lying under the lip of the shelf and 3-4 inches were sticking out into the aisle. Burnham described the accident as follows:
A. Okay, I was sitting on top of the ladder. I was sitting — it was late in the evening. We just usually set up, and I was just cleaning off the top of the shelf when he had walked in the aisle. I stopped and sat down on the ladder. And I was about to ask him if he needed help.
Q. Once again, where were you located?
A. At the end of the aisle.
Q. Where was he when you first saw him?
A. He had just turned the corner and come into the aisle.
Q. And approximately how long is that aisle?
A. Just to guess again, twenty-five, thirty feet.
Q. What happened when you saw him round the corner in front of the aisle?
A. Well, right before I went to ask him if he needed any help, he looked around. So, I kind of hesitated because at first I thought he might have been getting ready to steal something.
Q. Excuse me, Mr. Burnham, you were on the ladder at the end of the aisle. He didn’t see you?
A. No, sir, he didn’t look up.
Q. You never made eye contact with him?
A. It all happened real quick. He looked from side to side. As soon as he did that, that is when he went down. He never did look up at all.
Q. Tell us what you mean when you said he went down, what did he do?
A. He didn’t fall, he kind of just fell to his hands. He didn’t trip, or anything. Kind of went into the^I would have to say almost laid down because he used his hands to go forward.
Q. Did he land on the bubbles then?
A. Yes, sir.
Q. How far out from that shelf would you say those bubble packs were protruding on the floor?
*1197 A. Three, four inches.
Q. For a person to walk into those bubble packs, how close to that shelf would he have to be walking?
A. His shoulder would have to be touching the shelf to have walked on the bubble set.
Q. Now, when he fell down on the floor, were the bubble packs disturbed? In any event, were they scattered?
A. Not at first, but when I went in the back and called the police, and came back, just from him moving around, whatever, they got kicked around, just where he was is where they were all scattered.
Q. He actually land [sic] on the bubbles, or did he land along side the bubbles when he went down?
A. Well, to have landed on the bubbles, he would almost — he kind of just caught the bubbles, because he would have had to hit the shelf, too, if he landed dead center of the bubbles, but he didn’t, he went on the bubbles.
Q. Now, after that was all over, did you notice any defects in any of the bubble packs? Were any of the packs smashed?
A. We didn’t have to defect a single pack of the bubbles. (Record, pgs. 261-263)
An action for damages as a result of a “slip and fall” case is based on LSA-C.C. art. 2315, which provides as follows:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976).
In such an action for damages, a plaintiff bears the burden of proving that a foreign substance or object caused him to slip, fall and sustain injuries. Once this showing is made, the burden of proof shifts to the owner of the store to exculpate itself from the presumption that it was negligent. McCardie v. Wal Mart Stores, Inc., 511 So.2d 1134 (La.1987); Kelly v. Great Atlantic & Pacific Tea, 545 So.2d 1099 (La. App. 5 Cir.1989) writ den. 550 So.2d 629 (La.1989).
In the case sub judice, Boudreaux argues that the jury committed manifest error in finding that the defendant was not negligent, and, therefore, not liable to him for damages.
In the recent case of Rosell v. ESCO d/b/a Jolly Elevator Corp., et al, 549 So.2d 840 (La.1987), the Louisiana Supreme Court reiterated the well established rule that an appellate court may not set aside the findings of fact made by the jury in the absence of manifest error or unless the evidence shows that such finding is clearly wrong:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’ story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses that finding can virtually never be manifestly erroneous or clearly wrong, [citations omitted] Rosell, supra, at pages 844-845
It is obvious from the jury’s findings that they found the testimony of James Burnham, in which he said that Boudreaux did not trip over any object in the aisle, more credible than that of Boudreaux. We see no manifest error in this determination. *1198 Accordingly, we find no merit in Bou-dreaux’s allegation that the jury erred in finding that Kay Bee Toys was not negligent.
For the foregoing reasons, the judgment of the trial court dismissing the plaintiffs suit is affirmed. All costs are to be paid by the plaintiff/appellant.
AFFIRMED.