573 So.2d 1188 (1991)
Linda DeGRUY, Individually and as the Natural Tutrix of the Minor, Tabitha DeGruy
v.
ORLEANS PARISH SCHOOL BOARD and ABC Insurance Company.
No. 90-CA-0748.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1189 Steven M. Koenig, Heisler & Wysocki, New Orleans, for plaintiff/appellant.
Clare Jupiter, Jefferson, Bryan, Jupiter Lewis & Blanson, New Orleans, for defendant/appellee, Orleans Parish School Bd.
Before BARRY, WILLIAMS and PLOTKIN, JJ.
BARRY, Judge.
Linda DeGruy, individually and as natural tutrix of her daughter, Tabitha, appeals a judgment in favor of the Orleans Parish School Board which denied damages that allegedly resulted from her daughter's slip and fall at school.

FACTS
According to medical records, Tabitha DeGruy has a congenital bilateral upper extremity deformity and a deformity of the pelvis and right lower extremity. She has a short right femur, the right tibia bowes anteriorly, the fibula is hypoplastic, and she wears a prosthesis. Tabitha stated that her balance was normal despite the prosthesis and she has no trouble walking.
Tabitha testified that in 1987 she was an A and B tenth grade student at John McDonough Senior High School. On November 4 around 12:15 p.m. she was on the third floor waiting for the class bell to ring after the lunch period. She had gone up the main stairway, made a left, walked straight and stopped at the window.
After about fifteen minutes she started to walk to her next class. After turning the corner she took a few steps and fell backward and hit her head. Tabitha testified she did not see a puddle of red liquid on the floor before she fell.
Tabitha said no other person was in the hall so she got up by herself. Later she saw her cousin, Kim. Tabitha said she went to the school's office to file a report but did not wait to file it, and attended her classes. She did not tell anyone that she fell. Only Kim knew of the alleged fall. She said by the last class her right thumb hurt and she had a headache.
Tabitha testified that she did not see a custodian in the hall during lunch. She stated that coke cans and debris generally littered the hall and stairs. Students were permitted to buy drinks on the first floor during lunch period but they were not allowed to bring drinks to class. However, *1190 many students ignored that rule. She said a concession stand on the second floor was only open during lunch. The accident occurred after the first lunch period.
During cross-examination Tabitha said that the day before the accident she saw a liquid on the hallway floor. Defense counsel confronted her with the deposition in which she denied seeing liquid on the floor.
Linda DeGruy, Tabitha's mother, testified that on November 4, 1987 Tabitha went to bed after she got home from school. That night Tabitha told her that she fell at school, hit her head and back, and was in pain. Ms. DeGruy took Tabitha to Tulane Medical Center's emergency room. The next day Ms. DeGruy filed a report at school. She said Tabitha went back to the emergency room one more time.
Mildred Brown, custodian, testified that she cleaned rooms on the third and second floors, the library and teacher's lounge, plus hallways. She was responsible for the area where the accident occurred, but all custodians routinely cleaned spills wherever they were found. She said the third floor was not very messy because fewer students used the upper floor.
Ms. Brown testified that she reported to work at 10:00 a.m. and checked her assigned areas. If there was a spill, she cleaned it and removed debris. Custodians checked hallways after each class. In November, 1987 there were eight custodians and three were assigned to the third floor. During the two lunch periods the custodians alternated cafeteria duty and inspected the hallways before going to the cafeteria. They also checked their hallways between the first and second lunch periods. If a custodian was absent a substitute was used or other custodians covered for the absentee. Ms. Brown said that she was never away from her assigned hallway for more than 45 minutes.
On cross-examination she stated that one custodian was used during lunch for cafeteria duty. She did not remember whether she had cafeteria duty the day of the alleged accident. Ms. Brown stated that students often took items from the cafeteria (although not allowed) and bought soft drinks on the first floor stairwell and carried them into the hallways.
Florida Coates, custodian, testified as to the same daily procedure for custodians. She was not assigned to the third floor in November, 1987, but on occasion she did clean that hallway. She said the third floor was the cleanest section of the school because most of the students were on the first and second floors. She corroborated Ms. Brown's testimony about cafeteria duty and the first floor drink machine.
On cross-examination Ms. Coates stated that students were not allowed to remove food and drinks from the cafeteria. After defense counsel pointed to her contradictory deposition testimony she claimed her deposition and trial testimony were accurate because one referred to the rule that food could not be taken from the cafeteria; the other noted that students did remove food at times.
On cross Ms. Coates testified that room 301 was always assigned to a custodian; however, counsel called her attention to her deposition testimony that the floor in front of room 301 was not always assigned to a custodian. On re-direct Coates stated that there were a few days in 1987 when a custodian assigned to the third floor had been transferred and the other custodians rotated to clean room 301. Ms. Coates clarified her deposition testimony that a concession stand was on the second floor; she said that in 1987 the stand did not exist and was subsequently placed there.
Valerie Booth, custodian, testified that she was assigned to the third floor at the time of the accident. She stated there was a minimum of trash and liquid on that floor because of the lower student traffic. She corroborated Ms. Brown's testimony that custodians check hallways between lunch periods even though they had cafeteria duty. On cross-examination she agreed that students took food from the cafeteria, walked the halls with drinks and dropped containers in the stairwells and hallways. She said custodians did not patrol the hallways during the lunch periods.
*1191 Arman Green, the school's principal, identified the custodian time report and the daily class schedule which indicated that classes in 1987 were 50 minutes and lunch periods were 30 minutes. He said the head custodian made assignments and he signed the schedule. Mr. Green testified that at one time the school lost a custodian because enrollment dropped. A new schedule was made and additional rooms were assigned to the remaining custodians on a rotating basis. He did not remember whether room 301 was involved. He confirmed that room 301 and the hallway outside the room were assigned to Ms. Brown from April, 1987. He stated the third floor was not a problem because it required less cleaning than the other floors. There was a snack bar on the second floor and he believed two snack and drink machines were on the first floor at the time of the accident. The second floor concession stand was installed in 1987 or 1988.
On cross-examination Mr. Green stated the third floor was tile. He testified that students could not buy snacks throughout the day but admitted that occasionally a student would obtain a drink. Because students attempted to buy items between classes, the school switched to the concession stand which was only open during lunch. He testified there was a teacher on duty at the cafeteria door to control taking food out, but drink cans were found in the stairwells. He clarified that custodians did not patrol hallways at lunchtime or when classes changed.
Kim DeGruy, Tabitha's cousin, testified that she could not recall the date of the accident, but remembered that Tabitha had fallen. She said that she was walking in the third floor hallway during a class change and saw Tabitha on the floor and helped her up. Kim stated she did not see Tabitha fall, but escorted her to the office before going to the next class. Kim did not see nor look for a foreign substance on the floor. She said Tabitha had never fallen before.
The records of Dr. Carl Robinson, school reports, and Tulane Medical records were admitted into evidence along with Dr. Rodriguez's deposition. The custodial time report, the bell schedule, and the custodial assignment sheet were also introduced.

LAW
Negligence is based on the existence of a duty and the breach thereof that causes damages. La.C.C. Arts. 2315 and 2316. The conduct complained of must be the cause-in-fact of the harm. The court must then determine what was the duty imposed on the defendant and whether the risk which caused the accident was within the scope of the duty. A breach of duty which was imposed to protect against the risk involved makes the offender negligent. Morris v. Orleans Parish, School Board, 553 So.2d 427 (La.1989); St. Hill v. Tabor, 542 So.2d 499 (La.1989); Gresham v. Davenport, 537 So.2d 1144 (La.1989). There must be an ease of association between any duty imposed on the Board and the injury which occurred. Dunne v. Orleans Parish School Board, 463 So.2d 1267 (La.1985).
A duty may be defined as an obligation recognized by law to conform to a particular standard of conduct toward another. St. Hill, 542 So.2d at 502, quoting Prosser and Keeton on the Law of Torts (5th ed. 1984).
The standard of care for school teachers and administrators is that of a reasonable person in such a position acting under similar circumstances. Reasonable care includes protecting against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds.
Capers v. Orleans School Board, 365 So.2d 23, 24 (La.App. 4th Cir.1978).
The trial judge must consider the relationship between the risk of a fall and the reasonableness of the measures the School Board took to eliminate the risk. Sansonni v. Jefferson Parish School Board, 344 So.2d 42 (La.App. 4th Cir.1977), writ denied 346 So.2d 209 (La. 1977).
Under a negligence theory the plaintiff must prove that the School Board had actual or constructive knowledge of a condition unreasonably hazardous to the children *1192 under its supervision. Ardoin v. Evangeline Parish School Board, 376 So.2d 372 (La.App. 3rd Cir.1979); Lewis v. St. Bernard Parish School Board, 350 So.2d 1256 (La.App. 4th Cir.1977). A School Board is a public entity and is not liable for damages caused by a thing within its custody unless it had actual or constructive notice of the alleged defect and a reasonable opportunity to remedy the defect but failed to do so. La. R.S. 9:2800.
The trial court dictated its reasons into the record:
I find no credibility problem with his client [Tabitha DeGruy]. I find that rounding the corner and slipping on something, I would not find a comparative negligent situation. But I find that under the facts that have been given to this court and under the law that has been passed by the appellate courts and by the statutes, I cannot find that there was a violation of the duty of the School Board. I can't find that they violated a duty. And on their clean-up procedures, the situation is a room, hallway, really, in which no food is served. And it's not nearly as stringent requirements for clean-up as they are when food is served. And I just can't find a liability.

ANALYSIS
The custodians testified that they cleaned the hallways and picked up spills or debris after every class change. They checked and cleared the hallways after each lunch period even when on cafeteria duty.
In Sansonni, 344 So.2d at 42, a student fell because spaghetti sauce was on the cafeteria floor. The cleanup procedure involved someone mopping at the end of three lunch periods plus the dishwasher cleaned reported spills during lunch. In this case the cleanup procedure for a lightly traveled hallway was more comprehensive.
The presence of a liquid on the hall's floor does not automatically create liability. The plaintiff must show that the liquid was on the floor long enough for the school to have actual or constructive notice plus the opportunity to clean up. Tabitha was the only person who testified about liquid on the floor. Her cousin did not see a substance on the floor. There was no testimony as to how long the liquid was on the floor. Tabitha said she saw no custodian during lunch, but she was in class when the custodians cleaned up. There was no evidence to show that the normal routine was not followed on November 4, 1987. The trial court believed Tabitha but still concluded that the cleanup procedures after class and lunch were sufficient. The trial court found that the School Board exercised reasonable care to protect the students.
There was convincing testimony that the third floor had less traffic and debris or liquids were seldom on the floor. The soft drink machine was on the first floor and the concession stand (if it existed) was on the second floor. Students used benches on the first two floors. The procedure to have the hallway checked and cleared after every class period (50 minutes) and after each lunch period (30 minutes) was reasonable under the circumstances.
A reviewing court must give great weight to factual conclusions of the trial court. Such findings will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have no factual basis to find manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).
The judgment is affirmed.
AFFIRMED.