| .COOKS, Judge.
Appellant Sabrina Bailey appeals the trial court’s judgment denying her claim for. damages against Forest Hill Speedway. We affirm the trial court’s judgment for the reasons set forth below.
FACTS
On the evening of October 1, 1995, Sabrina Bailey Cedars, her boyfriend Corey Cedars (to whom she is now married) and Corey’s mother (Alice Cedars) were invitees at Forest Hill Speedway. Forest Hill is a dirt race track located on the outer city limits of Rapides Parish. The design of Forest Hill requires spectators to sit in bleachers to "view various car races, and traverse up and down “grandstands” to move from one bleacher to another.
Later that evening, Sabrina, her friend (Christina Chamberlain) and Corey ascended the steps in the central aisle way of the grandstands. Bailey noticed ice and liquid as she proceeded to the top of the stairs, but avoided it. She and the others | .remained at the top for approximately ten or fifteen minutes. While descending the stairs, Bailey turned to say something to Corey, who was behind her. According to Sabrina, her foot slipped, she tumbled down several steps, and was knocked unconscious. She was rushed to the emergency room, and later sought treatment from her family physician.
Bailey believes she slipped on liquid and ice, although she did not see any while descending the steps. She testified, after her fall while lying on the steps, an unidentified person informed her she slipped on ice. The eye witnesses to the accident, including Corey and Chamberlain, who actually testified, related they did not see a foreign substance on the steps.
Bailey alleges she sustained “debilitating bodily injury” because the grandstands were negligently maintained, creating an unreasonable risk of harm. Moreover, she asserts that Forest Hill Speedway and its insurer, Essex Insurance Company, are strictly liable because the grandstands present an “unreasonably hazardous condition.” Specifically, Sabrina contends the steps were much too wide to allow a person to descend or ascend at a comfortable stride. Also, she alleges the dimension between some of the steps varied, and the rounded edge on the steps increased the likelihood of slipping. Likewise, she asserts dew and dust collect on the steps creating a slippery condition. Additionally, she indicates the steps are made of steel, and in many places, the paint is worn, leaving no skid resistance properties on the treads at all. Further, there are no handrails in place and the lighting, allegedly, is inadequate. Finally, Sabrina insists that cokes, trash and other debris remain on the steps several days after the races; *162 and rain, rather than soap or water, is used to remove the debris.
Phillip Beard, an expert in the field of architectural engineering, attempted to prove the steps were defective by relying on the Life Safety Code of the National Fire Protection Association. But, Forest Hill filed a motion in limine and the trial court |4excluded its use. After a bench trial, Bailey’s petition for damages was dismissed and the trial judge concluded Defendants were neither negligently nor strictly liable. From this judgment, Bailey appeals.
ASSIGNMENTS OF ERROR
Bailey assigns three errors for this court’s review.
1. The trial court erred in granting defendant’s motion in limine, thereby excluding the Life Safety Code, as well as any mention thereof, at the trial of this matter.
2. The trial court erred in finding that the grandstand in question did not create an unreasonably dangerous risk and that the plaintiff did not fall because of any foreign substance.
3. The trial court erred in excluding Exhibits P. 7 and P. 8.
THE LIFE SAFETY CODE
Bailey argues the trial court inappropriately excluded The Life Safety Code from evidence. In 1974, effective January 1,1975, the legislature enacted La.R.S. 40:1578.6, which adopted the provisions of the Life Safety Code of 1967. The statute establishes minimum safety standards for all “newly constructed structures and moveables.” Section (C) of the statute specifies:
The Act shall not apply to existing buildings which were lawfully constructed and maintained unless the fire marshal deems that a serious life hazard exists due to a particular condition, at which time he can require the institution of proper fire protection measures to alleviate the particular hazards noted according to the 1967 edition of the N.F.P.A. Life Safety Code. Canizaro-901 Limited Partnership v. Department of Public Safety, 570 So.2d 56 (La.App. 4 Cir.1990).
The record indicates the bleachers at Forest Hill were installed in 1970, prior to the effective date of the statute. La.R.S. 40:1578.6 specifically states pre-existing buildings are not governed by the statute’s provisions, unless the fire marshal declares a life hazard exists.
| ¡Jin Zanders v. Lambert, 514 So.2d 617 (La.App. 4 Cir.) writ denied, 515 So.2d 1109 (La.1987), a building constructed in the 1920’s burned to the ground as a result of arson. Plaintiffs attempted to introduce the Life Safety Code, but the trial judge refused to admit it since the clear language of the statute excludes pre-existing buildings.
In McDonough v. Royal Sonesta, Inc., 626 So.2d 438 (La.App. 3 Cir.1993), a hotel patron brought an action against the hotel to recover for injuries sustained in a slip and fall accident. Plaintiff alleged the doorway where she fell presented an unreasonable risk of harm. At trial, much testimony was heard concerning violations of the New Orleans Building Code and the National Fire Protection Association’s Life Safety Code. Defendants argued the Life Safety Code was not applicable to the facts of their case. The judge agreed and instructed the jury as follows:
The NFPA .... rules are established for exits used by persons during emergency situations. Any testimony or reference made by these experts, three in number, to the National Fire Protection Association standards should be stricken or disregarded by you as they do not apply to the premises in question ...
Id. at p. 439.
Likewise, in Millet v. Cormier, 95-953 (La.App. 3 Cir. 3/27/96); 671 So.2d 1101, writs denied, 96-1026, 96-1036 (La.5/31/96); 673 So.2d 1036, plaintiff sus *163 tained injury in a slip and fall accident and relied on the Life Safety -Code to bring suit against owners of the building where the accident occurred. The trial judge concluded otherwise, finding the code was only applicable in emergency situations, and in that case, there was none.
Moreover, in Pardee v. Natchitoches Parish Police Jury, 600 So.2d 867 (La.App. 3 Cir. ), writ denied, 604 So.2d 1008 (La.1992), plaintiff fell down the courthouse steps and sued for damages. Bailey’s own expert witness, Ronnie Beard, testified and acknowledged that the Life Safety Code governs fire escapes and 16emergency situations only and does not apply to the everyday use of steps.
Recognizing the holdings in the noted cases, we conclude as well that the Life Safety Code was properly excluded from evidence in this case.
LAW
Liability for injuries sustained on the premises of another may be based on either strict liability or negligence. In this case, Bailey relies on both theories. The Louisiana Supreme Court, in Fontenot v. Fontenot, 93-2479, pp. 2-3 (La.4/11/94); 635 So.2d 219, 221, distinguishes between the burden of proof necessary to recover in either ease. The court explains:
Under Louisiana law, liability for injuries sustained by one on the premises of another may be based on either strict liability or negligence. In an action asserting strict liability under La.C.C. art. 2317, the plaintiff bears the burden of proving: (1) the thing which caused damages was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries and/or damage were caused by the vice or defect. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990). The plaintiff asserting a ' claim against a premises owner based on negligence, or liability under La.C.C. 2315, where the sole basis alleged for holding the owner liable is his relation to the property, has the same burden, plus the additional burden of proving defendant’s scienter, i.e., that defendant “knew or should have known” of the defect. Id. at 1112 n. 7; see also Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).
NEGLIGENCE
It is well settled that businesses have a duty to protect their invitees against hazards that create an unreasonable risk of harm. Sansonni v. Jefferson Parish School Board, 344 So.2d 42 (La.App. 4 Cir.) writ denied, 346 So.2d 209 (La.1977). According to Spiers v. Lake Shore Enterprises, Inc., 210 So.2d 901 (La.App. 1 Cir.1968), the owner of a public entertainment facility, such as Forest Hill, must use ordinary or reasonable care to maintain his premises in a reasonably safe condition, considering the nature of his particular business. The owner of such premises is not, however, the insurer of the safety of his invitees. Moreover, an unreasonable risk of harm is ^subject to review on appeal under the manifest error standard. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362. Accordingly, the appellate court may only disturb the lower court’s holding if the trier of fact was clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
La.Civ.Code art. 2315 governs actions seeking damages for negligence. It provides that “every act, whatever of man, that causes damage to another, obliges him by whose fault it happened to repair it.” In slip and fall cases, the plaintiff bears the burden of proving a foreign substance or object caused him to slip, fall and sustain injuries. Kelley v. Great Atlantic & Pacific Tea Co., Inc., 545 So.2d 1099 (La.App. 5 Cir.), writ denied, 550 So.2d 629 (La.1989). Once established, the burden of proof shifts to the property owner to *164 exculpate itself from the presumption he or she was negligent. Id.
In Boudreaux v. Melville Corporation, 562 So.2d 1195 (La.App. 5 Cir.1990), plaintiff slipped and fell in the aisle at Kay-Bee Toy Store, and sustained injury to his back. He claimed to have fallen on something with wheels, but the assistant manager who witnessed the accident testified plaintiff just “went down,” using his hands to fall forward. Both the trial court and the appellate court held plaintiff did not prove he slipped on a foreign substance.
Likewise, in Holden v. Louisiana State University Medical Center, 29,268 (La.App. 2 Cir. 2/28/97); 690 So.2d 958, a visitor at a hospital slipped and fell, allegedly, on fruit juice. On appeal, the court held plaintiff failed to show the hospital’s negligence was the most plausible explanation for the accident. The court noted the presence of liquid on a public floor way does not automatically create liability upon mere proof of an accident.
In Jones v. City of New Orleans, 559 So.2d 28 (La.App. 4 Cir.1990), plaintiff | dost her footing and slipped on the stairs located at her school. Although she alleged slipping on a foreign substance, several witnesses to the accident testified they did not see any foreign substances on the stairs. On appeal, the court recognized “a plaintiff must show that he has fallen on a foreign substance or object on the floor to establish a prima facie case in negligence.” Id. at p. 29.
In this case, the trial court found Bailey did not prove that a defect on the premises caused her fall. In light of the aforementioned cases and the record, we agree. There is no evidence that the presence of a foreign substance caused Bailey’s fall. She argues an “un-identified person” informed her she slipped on ice. However, as in the Jones case, several witnesses, including Bailey’s husband and best friend, testified they did not see a foreign substance on or near the accident scene. In fact, Corey testified he does not know how or why Bailey fell. A disinterested witness, Jerry Ware, was seated right beside the area where Bailey fell. He testified Bailey was traveling down the stairs at a faster than normal rate when she appeared to lose her balance and fall head over feet.
Bailey also argues debris remain on the steps for several days and possibly contributed to her fall. We find the record establishes Forest Hill has exercised “poor maintenance.” Photos introduced into the record indicate the grandstands have been trashy when the races end. However, the photographs were taken a year after Bailey’s accident, and still, by themselves, do not show trash was the cause of Bailey’s fall. In fact, the court in Gray v. Louisiana Downs, 585 So.2d 1238 (La.App. 2 Cir.1991), concluded it would be unreasonable to require the owner of a race track to keep his walkways completely free of litter during the course of an amusement event. Bailey’s negligence claim simply failed for lack of proof.
STRICT LIABILITY
In Fontenot, 635 So.2d 219, plaintiff injured her ankle after she slipped on a | apiece of firewood and fell down her neighbor’s steps. The court held strict liability was not available to plaintiff because no evidence was adduced at trial to indicate the steps, by and of themselves, were inherently defective.
A defective condition is a flaw or condition of relative permanence inherent in the thing as to one of its qualities. Boudreaux v. Farmer, 604 So.2d 641 (La.App. 1 Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992). We note not every defect can serve as a basis for a claim; the defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3 Cir.1981). In the present action, we find Bailey failed to prove the grandstands, in and of them *165 selves, were inherently defective. She relies on the opinion of her expert witness, Phillip Beard, and alleges improper dimensions of the steps, improper riser height and tread width, improper tread nosing, lack of adequate slip resistance, lack of handrails, and poor lighting all combined to cause her fall. However, Beard’s conclusions were based solely on the Life Safety Code that was excluded from evidence. During cross examination, Beard admitted that his “opinions” regarding these alleged defects were based solely on the code. Pertinent parts of his testimony follow:
Q. [I]sn’t it a fact, Mr. Beard, that all of the opinions you have given today were part of your original report?
A. That’s correct.
Q. And your original report was founded upon the Life Safety Code.
A. My original report was founded on reasonable standards, one of which was a life safety code, yes.
Q. Alright, can you point out in this particular report any reference to another standard?
A. I don’t think I did, not in that report there.
Q. I don’t think so either.
Q. So the basic opinions that you have were expressed back on July 29, 1997.
|10A. That’s correct.
Q. Those are the same opinions you have given today.
A. Yes that’s correct.
Q. The opinions that you gave on July 29, 1997 were founded upon the application of the National Life Safety Code?
A. As a reasonable standard, that’s correct.
Since Beard’s conclusions were derived from an inapplicable code, his testimony did not add to Bailey’s proof. Bailey, thus, ’ failed to establish a defective condition existed.
DEPOSITION COSTS
According to La.R.S. 13:4533, the costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used at the trial, and all other costs allowed by the court, shall be taxed as costs. Although the trial court did not include Bailey’s deposition expenses when it taxed costs against her, Bailey’s complaint regarding these expenses has been rendered moot on appeal by our decision affirming the judgment below. Ordinarily, all costs are assessed against the losing party and we are not inclined to depart from this rule.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Sabrina Bailey.
AFFIRMED.