| PLOTKIN, Judge.
Defendant, Orleans Parish School Board (“OPSB”), appeals a trial court judgment awarding plaintiffs, Robert and Joyce Green, $15,000 for injuries suffered by their son, Everidge Green, as a result of a slip and fall accident at Beauregard Middle School (now Thurgood Marshall Middle School). For the reasons explained below, we amend and affirm.
Facts
At trial, Everidge testified that he suffered severe injury to his right arm when he slipped and fell on water on the floor of the basement of Beauregard Middle School while walking down the hall, returning from the boy’s bathroom, at about 2:15 p.m. on May 14, 1994. Everidge, who was twelve at the time, reported his injury to the school office. Someone called Mrs. Green, who picked Everidge up and took him to the Mercy Hospital Emergency Room, where he was diagnosed with a *1084 fracture of the right upper arm, with some displacement.
Everidge’s version of the facts was contested at trial by Beauregard Middle School personnel. Principal Sheila Thomas testified that Everidge told her that he was running when he slipped and fell; she said that he never mentioned any water 1 ¡¡.and that she saw no water on his clothes or person despite the fact she looked at him closely trying to ascertain the extent of his injuries. Assistant Principal Albert Claude testified that he entered the principal’s office at some time while Everidge was describing his fall and that he left immediately to inspect the basement, but saw no water or other foreign matter on the floor. Teacher Jeanne Miranne testified that she also inspected the basement when she heard that Everidge had fallen, but that she did not see any water or other foreign matter on the floor. Ms. Miranne said that she then went to the principal’s office, where she saw Everidge, but she did not see any water on his clothes. Ms. Thomas also said that she inspected the area, after Everidge left with his mother and before the 3:15 p.m. final bell. .Both the school’s injury report and the notes taken by the emergency room doctor indicated that Everidge was running at the time of his fall.
On the other hand, Beauregard Middle School Assistant Custodian in 1994, Aaron Christophe, testified on behalf of the Greens, stating that he was responsible for the basement area of the school at the time of Everidge’s accident. Although he was not present at school on May 14, 1994, he said that an ongoing problem with a leak from one of the basement water fountains existed at that time. He said that the problem had been reported and that attempts had been made to fix the fountain, but that he nevertheless had to mop in the area more than normal. He did not know who was responsible for the basement area on the day of Everidge’s accident, nor did anyone else identify that person.
Testimony from Everidge’s father, Mr. Green, also indicated a continuous problem with leaks from one or more water fountains in the basement. Mr. Green testified that he often went to the basement of the school when picking his sons up | ¡¡after school and on other occasions and that water was often out to the middle of the floor in the basement.
Following the trial, the trial judge entered judgment in favor of the Greens, finding that Everidge was credible and citing Mr. Christophe’s testimony concerning ongoing problems with one of the water fountains in the area. The judge also noted that the defense witnesses confirmed that Everidge had had an accident, and noted his finding that cleanup could have occurred after Everidge’s fall and before the school personnel inspected the area.
On May 7, 1999, the trial court entered a written judgment awarding Everidge $15,000 in general damages, plus medical expenses, court costs, and judicial interest. Thereafter, on approximately May 17, 1999, the OPSB filed a “Rule to Amend Judgment” to specify the amount of medical damages awarded. On May 25, 1999, the Greens filed a “Motion to Amend Judgment,” seeking additional general damages to compensate Mr. and Mrs. Green for their loss of consortium caused by Everidge’s injury. On approximately July 6, 1999, the trial court signed a “Judgment on Motion to Amend Judgment and on Motion for New Trial,” expressly in response to “Defendant’s Motion to Amend Judgment” and “Plaintiffs Motion for New Trial,” both of which were heard on June 18, 1999. The court restated the $15,000 general damage award to Everidge, specified medical expenses in the amount of $1,974, and awarded general damages of $100 each to Mr. and Mrs. Green.
The OPSB appealed, assigning the following errors:
1. The trial court erred in finding that defendant had actual or constructive knowledge that water was present *1085 on the basement floor prior to the accident and failed to take reasonable steps to clean it up.
|42. The trial court committed manifest error in finding that Everidge Green slipped on water on the basement floor.
3. The trial court erred in finding that the water on the basement floor constituted an unreasonable risk of injury to a reasonably prudent person in Everidge Green’s circumstances.
4. The trial court erred in failing to find Everidge Green liable for contributory negligence.
5. The trial court was without authority to amend the judgment after delays for requesting a new trial had passed.
Liability of OPSB
OPSB’s first three assignments of error are all related to whether the trial court properly held OPSB liable for Ever-idge’s accident and injury. On appeal, the OPSB argues strenuously, without citing any authority for its argument, that the provisions of LSA-R.S. 9:2800.6, relative to “Burden of proof in claims against merchants,” as it was amended in 1990, governs the determination of liability of non-merchants, including schools, for slip and fall accidents on their premises. Our research indicates that no Louisiana court has previously considered this argument. The purpose of the special statute relative to merchant liability is to define the burden of proof in cases involving a slip and fall accident in a commercial establishment. Because schools owe very different duties to students than those owed by merchants to customers and because a special relationship exists between schools and students, we decline to extend the application of LSA-R.S. 9:2800.6 to the facts of this case.
Moreover, in DeGruy v. Orleans Parish School Board, 573 So.2d 1188 (La.App. 4th Cir.1991), which was decided after the most recent amendments to LSA-|R.S. 9:2800.6,5 this court set forth the following standard for determining the negligence of a school board in a slip and fall case similar to the instant case:
Negligence is based on the existence of a duty and the breach' thereof that causes damages. La. C.C. Arts. 2315 and 2316. The conduct complained of must be the cause-in-fact of the harm. The court must then determine what was the duty imposed on the defendant and whether the risk which caused the accident was within the scope of the duty. A breach of duty which was imposed to protect against the risk involved makes the offender negligent. Morris v. Orleans Parish School Board, 553 So.2d 427 (La.1989); St. Hill v. Tabor, 542 So.2d 499 (La.1989); Gresham v. Davenport, 537 So.2d 1144 (La.1989). There must be an ease of association between any duty imposed on the Board and the injury which occurred. Dunne v. Orleans Parish School Board, 463 So.2d 1267 (La.1985).
A duty may be defined as an obligation recognized by law to conform to a particular standard of conduct toward another. St. Hill, 542 So.2d at 502, quoting Prosser and Keeton on the Law of Torts (5th ed. 1984).
The standard of care for school teachers and administrators is that of a reasonable person in such a position acting under similar circumstances. Reasonable care includes protecting against unreasonable risk of injury from dangerous or hazardous objects in the school buildings and on the grounds.
Capers v. Orleans School Board, 365 So.2d 23, 24 (La.App. 4th Cir.1978).
The trial judge must consider the relationship between the risk of a fall and the reasonableness of the measures the School Board took to eliminate the risk. Sansonni v. Jefferson Parish School Board, 344 So.2d 42 (La.App. 4th Cir.1977), writ denied, 346 So.2d 209 (La.1977).
Under a negligence theory the plaintiff must prove that the School Board *1086 had actual or constructive knowledge of a condition unreasonably hazardous to the children under its supervision. Ardoin v. Evangeline Parish School Board, 376 So.2d 372 (La.App. 3rd Cir.1979); Lewis v. St. Bernard Parish School Board, 350 So.2d 1256 (La.App. 4th Cir.1977). A School Board is a public entity and is not liable for damages caused by a thing within its custody unless it had actual or constructive notice of the alleged defect and a reasonable opportunity to remedy the defect but failed to do so. La. R.S. 9:2800.
DeGruy, 573 So.2d at 1191-92. From the above quote, the following elements that must be proven by a plaintiff in a slip and fall case against a school board may be derived:
1. Cause-in-fact;
| fi2. Breach of the duty to protect against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds;
3. Ease of association between the duty and the injury suffered by the plaintiff;
4. Relationship between risk of fall and reasonableness of the measures the school board took to eliminate the risk; and,
5. Actual or constructive notice.
In the instant case, the trial court believed Everidge’s testimony that the cause-in-fact of his fall was water on the floor of the basement of the school, where the boys’ room was located. The OPSB, however, tried to prove both that the actual cause-in-fact of the fall was the fact that Everidge was running and that there was no water on the floor of the school basement at the time. However, the trial judge, in her oral reasons for judgment, specifically found that Everidge was credible, expressly choosing to credit Ever-idge’s testimony, over that of the testimony of the Beauregard Middle School personnel. As the factfinder’s decision based on a credibility call cannot be manifestly erroneous, we find no merit in the arguments of the OPSB relative to cause-in-fact for Everidge’s accident.
Moreover, the trial court implicitly found that the School Board, by allowing water on the floor of the school’s basement, breached its duty to protect against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds. In Morris v. Orleans Parish School Board, 553 So.2d 427 (La.1989), in which a student fell while running to drink water from an outside drinking fountain, the court found “that the school board acted unreasonably in failing to repair the fountain despite receiving three requests to fix|7it during the six months before the fall and in allowing the elementary school children to run on the wet asphalt during school hours.” Id. at 429. In the instant case, Mr. Chris-tophe testified concerning “ongoing” problems with one of the water fountains in the basement, and stated specifically that he had made repeated requests that the water fountain be repaired. Thus, we find no error in the trial court’s finding that the OPSB breached its duty in this case.
Concerning the ease of association between the duty and the injury suffered by Everidge, the Morris court found “that the particular risk, that one of the students would slip and fall on the wet asphalt while running towards the fountain during school hours, was clearly within the scope of the duty” owed by the school board. Id. Likewise, in the instant case, the risk that a student would slip and fall on the water while returning from the bathroom is easily associated with the OPSB’s duty.
The OPSB asserts however that the measures it took to eliminate the risk were reasonable. In DeGruy, 573 So.2d 1188, the court denied the plaintiff any recovery on the basis of its finding that the measures taken by the school board to eliminate the risk were reasonable, describing those measures as follows:
The custodians testified that they cleaned the hallways and picked up *1087 spills or debris after every class change. They checked and cleared the hallways after each lunch period even when on cafeteria duty.
Id. at 1192. In the instant case, Mr. Christophe testified to his own practice of cleaning the basement after the second lunch period, which ended at approximately 1:15 p.m. or 1:30 p.m., then cleaning the basement after the final bell at 3:15 p.m.. This procedure was confirmed by- Ms. Thomas, who said that she would have seen the water on the floor when she went to the basement just prior to the final bell if it | shad been there because the basement would not have been cleaned in the interim. However, the OPSB failed to produce any evidence concerning the procedures followed on the day of Everidge’s accident. In fact, the OPSB’s witnesses failed to prove that anyone had been assigned to clean and maintain the school basement on the day of Everidge’s fall in Mr. Chris-tophe’s absence. Ms. Thomas testified that she was sure that someone did clean and maintain the basement, but did not know who that might have been. Under the circumstances, we find no error in the trial court’s finding that the OPSB failed to take reasonable measures to protect against the risk of a student slipping in water on the basement floor and falling.
Finally, the OPSB argues that the Greens failed to prove that the OPSB had actual or constructive notice of the presence of water on the school basement floor on the date of the accident. Based on cases interpreting LSA-R.S. 9:2800.6, the OPSB suggests that the Greens had the burden of proving how long the water was actually on the floor, in order to prove constructive knowledge. However, we have already found that this case is not controlled by LSA-R.S. 9:2800.6. Moreover, Mr. Christophe’s testimony indicates that, even assuming that the regular procedures were followed that day (a fact the OPSB failed to prove), the basement floor would not have been cleaned or inspected for approximately an hour prior to Ever-idge’s fall. Even more importantly, Mr. Christophe’s testimony concerning ongoing problems with one of the water fountains, coupled with his testimony that the basement had to be mopped more often than usual, was sufficient to establish notice to the OPSB that water could be present on the basement floor of Beauregard Middle School at any time, especially if not mopped more often than usual. Thus, we find no manifest error in the trial court’s implicit finding that the OPSB had constructive notice of the unreasonably dangerous condition presented [ flby the water leaking from the fountain. Accordingly, the trial court’s finding that the OPSB is liable for Everidge’s accident is affirmed.
Contributory negligence
By its fourth assignment of error, the OPSB argues that the trial court erred in failing to find Everidge liable for contributory negligence. Since contributory negligence has been abrogated in Louisiana in favor of pure comparative negligence, we assume that the OPSB intended to argue that the trial judge should have assigned some percentage of comparative negligence to Everidge. The only reason given by the OPSB to support its argument that Everidge should have been assigned comparative negligence is Ever-idge’s alleged admission that he was not paying attention to the path before him as he walked back to class. Although Ever-idge testified that he did not see the water prior to stepping in it, he explained that he was concerned about the fact that his nose had been bleeding and he was trying to keep the blood from getting on his shirt. “While a child of 12 can be guilty of contributory [now comparative] negligence, such a child’s caution must be judged by his maturity and capacity to evaluate circumstances in each particular case, and he must exercise only the care expected of his age, intelligence and experience.” Wilkinson v. Hartford Accident & Indemnity Co. 411 So.2d 22, 24 (La.1982). Moreover, the defendant bears the burden of proving contributory [comparative] negligence by a preponderance of the evidence. Id.
*1088 In Wilkinson, the court found that the defendant school board failed to carry its burden of proving that a 12-year-old student who crashed through a glass panel in a school gymnasium foyer while engaging in an unsupervised race during physical education class was guilty of contributory negligence. Id. The court Instated as follows: “We consider that it was normal behavior for 12-year-old boys to do what [the plaintiff student] and his teammates did under the circumstances despite a previous warning to refrain from engaging in horseplay in the lobby.” Id. at 24. In the instant case, we believe that the OPSB also failed to prove comparative negligence committed by Everidge. It is normal behavior for children who are preoccupied with one issue (like Everidge’s bloody nose) to fail to watch where they are walking.
Amended judgment
By its final assignment of error, the OPSB asserts that the trial court improperly amended the judgment to award Mr. and Mrs. Green damages for loss of consortium because they failed to file their “Motion to Amend” within the seven-day delay period for filing a motion for new trial. La. C.C.P. art. 1974. Moreover, under the provisions of La. C.C.P. art. 1951, relative to Amendment of Judgment, substantive amendments are prohibited. Webster v. Boh Brothers Construction Co., 603 So.2d 761 (La.App. 4th Cir.1992). A substantive amendment is defined as “an amendment that either adds something to or takes something away from the original judgment.” Villaume v. Villaume, 363 So.2d 448 (La.1978). The amendment to award loss of consortium damages to Mr. and Mrs. Green was unquestionably a substantive amendment. Accordingly, we amend the judgment to delete the loss of consortium awards in favor of Mr. and Mrs. Green.
In Conclusion
Accordingly, the judgment is amended to delete the awards for loss of consortium damages in favor of Mr. and Mrs. Green. In all other respects, the judgment is affirmed.
AMENDED; AFFIRMED AS AMENDED.