BARRY, Judge.
The Orleans Parish School Board appeals a $48,538.70 slip and fall verdict in favor of Sidney Morris and his minor daughter, Sak-inah.
The trial judge awarded Sakinah $5,000 for pain and suffering, $7,500 for mental anguish, $2,500 for inconvenience, $5,000 for loss of school time, $10,000 for future pain and suffering, and $10,000 for permanent disfigurement. Morris was awarded $8,538.70 for medical expenses with the proviso that any reduction would reduce the School Board’s liability.[1] The court found Sakinah ten percent (10%) comparatively negligent.
The School Board argues that there is no causal relationship between Sakinah’s fall and osteomyelitis on her hip joint, and that the school’s premises did not pose an unreasonable risk of harm. .
FACTS
Sakinah testified that on Friday February 14, 1986 she was a 12 year old student at Bauduit Elementary School. She had lunch and went outside to get water from the fountain on the Antoine St. side of the school. She was running, tried to stop, and fell on her right hip. She said there was water on the ground around the fountain, but no puddle. Later she jumped rope during recess and claimed that her hip began to hurt when she went to class. In a deposition Sakinah said she did not feel pain until the next day, and never had hip pain prior to the accident.
Donald Johnson, the school’s head custodian, testified that he had problems with the school’s fountains. He had a notation that the subject fountain was “stopped up” with sand on November 18, 1985. He called the maintenance department, but did not make a written report. Johnson said there was a concrete slab in front of the *442 fountain with a slight slope to the asphalt yard. Cracks prevented water from flowing freely.
Lloyd Brannon, the School Board’s Director of Maintenance, testified that a request relating to leaking gaskets in the fountain had been filed August 1, 1985, but his records did not show that the fountain was repaired. He stated that his department received a requisition relating to a “running” fountain on the Antoine St. side of the school on December 6, 1986 prior to the accident. His records indicated repairs were made on April 18, 1986 subsequent to Sakinah’s fall.
Sam Scandaliato, a defense witness and consulting civil engineer, viewed the fountain in May, 1988 and found a slope which would cause water to drain.
Sidney Morris testified that Sakinah complained of pain the afternoon she fell and she never had prior hip pain. He took her to Charity Hospital, the doctor thought she had a muscle strain and sent her home. Morris said Sakinah continued to have pain and two days later he took her back to Charity Hospital.
Dr. Neirschwander, a second year resident in orthopedics, testified that he and Dr. Murphy treated Sakinah in Charity’s emergency room on February 18, 1986.[2] Dr. Neirschwander said she complained of right hip pain and had fever over three days. Her history included the slip and fall four days earlier. On February 16 the diagnosis (emergency room) was a muscle strain. After an examination on February 18 Dr. Neirschwander along with Dr. Murphy noted pain in her right hip. Aspiration indicated an infected hip joint.
Dr. Murphy, a fourth year resident in orthopedics, testified by deposition that he and Dr. Neirschwander treated Sakinah. He said he performed surgery to drain her hip joint and to remove the infected substance, staphylococcus aureus. The wound was left open for drainage and healed to form a scar. Sakinah tolerated the procedure well, was placed in traction for several weeks, experienced a common rash reaction to an antibiotic, but she had an overall good recovery. She was discharged from the hospital March 25, 1986 and used crutches. Sakinah went back to school on April 25, 1986 and on April 30, 1986 was discharged from the outpatient orthopedic clinic.
Dr. Gordon Nutdik, an orthopedic surgeon, reviewed Sakinah’s hospital records and testified as an expert in orthopedics. He declared that sepsis of the hip joint was not normally associated with blunt trauma although a percentage of patients experienced trauma prior to infection.
THE LAW
Tort liability is based on the existence of a duty and the breach thereof. The breach must be the cause-in-fact of the resultant injury which the duty was designed to prevent. La.C.C. Art. 2315; Chandler v. Bunge Corporation, 489 So.2d 275 (La.App. 4th Cir.1986), writ denied 492 So.2d 1219 (La.1986); Capers v. Orleans Parish School Board, 365 So.2d 23 (La.App. 4th Cir.1978).
The standard of care for school teachers and administrators is that of a reasonable person in such a position acting under similar circumstances. Reasonable care includes protecting against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds.
Ardoin v. Evangeline Parish School Board, 376 So.2d 372, 373 (La.App. 3rd Cir.1979), quoting Capers v. Orleans Parish School Board, 365 So.2d at 24.
Under a negligence theory the plaintiff must prove that the owner knew or should have known of the risk and failed to take adequate steps to prevent the damage. C.C. Art. 2317 strict liability relieves a plaintiff of proof that the owner had knowledge of the risk. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Hunt v. City Stores, 387 So.2d *443 585 (La.1980). The School Board is a public entity and is not liable for damages caused by a thing within its custody unless it had actual or constructive notice of the alleged defect, and a reasonable opportunity to remedy the defect but failed to do so. La. R.S. 9:2800.
Under either theory the plaintiff must prove by a preponderance of the evidence that the injury was caused by the defendant’s negligence. Boothe v. New Orleans Public Service, Inc., 447 So.2d 620 (La.App. 4th Cir.1984). The plaintiff must show that it is more probable than not that the injury resulted from the defendant’s conduct. Bartley v. Pailet, 527 So.2d 430 (La.App. 4th Cir.1988), writ denied 532 So.2d 115 (La.1988).
As a reviewing court we give great weight to the factual conclusions of the trial court. When there is a conflict in testimony, evaluations of credibility should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). If expert medical testimony differs the trial court must determine the most credible evidence and its findings of fact will not be disturbed absent manifest error. Nathan v. Home Depot, 522 So.2d 712 (La.App. 5th Cir.1988).
CAUSATION
The School Board argues that a causal relationship between Sakinah’s fall and osteomyelitis of her hip joint was not proven. We agree.
Dr. Neirschwander refused to use “probability” when he was asked whether the fall more probably than not contributed to Sakinah’s infected hip. He testified it was possible that her fall localized transient bacteremia, which is bacteria in the blood. He noted that bacteremia (which can be caused from brushing teeth) can also seep into a bone and extend to the joint. He said that a small percentage of patients develop such an infection in the area of a trauma. Nor would Dr. Neirschwander say the septic hip would not have occurred without trauma.
Dr. Neirschwander failed to find a cause and effect related to Sakinah’s fall. After extensive questioning by the trial court, the doctor stated that the fall probably aggravated Sakinah’s hip, which might have caused the septic joint.
Dr. Murphy testified that more probably than not the fall did not cause Sakinah’s septic hip joint. He said Sakinah probably had bacteremia which settled into the joint and caused infection. He said Sakinah, like most patients with a similar history, had no identifiable source of the infection. The doctor stated that a blunt trauma, such as a fall, could not cause such an infection to enter the bloodstream.
Dr. Murphy acknowledged the possibility that the bacteremia settled into the joint because it was injured. However, he declared that in most instances septic joints are not related to a traumatic event. He stated that Sakinah’s fall probably did not aggravate or accelerate the hip infection.
Dr. Nutdik testified there was no definitive relationship between Sakinah’s fall and the infection. Dr. Nutdik noted that approximately thirty-three percent of his patients with such infections had a trauma, but the majority had infection without trauma.
Dr. Nutdik noted that no medical authority associated trauma with osteomyelitis. He stated that a fall was a possible contributing factor in a septic hip, but concluded that if Sakinah had osteomyelitis before the fall, the fall did not affect her condition.
The trial court stated:
This court finds as a matter of fact that even if this child had a condition which was bound to happen at some point, all of the testimony and the statements that were made at the time of her hospitalization, the history, all of that points clearly to the fact that the child had never had any problems with her right hip prior to the time that she fell in the school ground. Thus, this Court has no difficulty in concluding that the fall in the school grounds triggered a condition that was waiting to be triggered even though the trama [sic] did not cause the condition that existed.
*444 The trial court was not faced with differing medical opinions. None of the doctors stated that the fall or trauma caused the hip infection. Dr. Murphy testified that more probably than not the fall did not cause the septic hip joint. Dr. Neirschwan-der (Sakinah’s witness) only declared that it was possible the trauma localized transient bacteremia, and he noted an aggravation of the condition. Dr. Nutdik said a fall was a possible explanation, but concluded that sepsis of the hip joint was not normally associated with blunt trauma.
The trial court questioned Dr. Neir-schwander as to the possibility that trauma to the hip caused bacteremia and he answered that it was possible, but qualified his answer by stating he could not say what happened. Although the court pointed to the doctor’s confusion over the legal definition of causation, the trial judge did not elicit a response from Dr. Neirschwan-der or any other medical expert that Saki-nah’s fall “more probably than not” caused her septic hip.
After Dr. Neirschwander testified that he could not say the fall caused the hip infection, the trial court declared that the doctor had stated “in no uncertain terms” that it was “not likely” that the bacteremia would have localized at the hip joint except for the trauma. The court interpreted Dr. Nutdik’s statement that in thirty-three percent of the cases there was a connection between trauma and infection. Dr. Nutdik stated that only thirty-three percent of his patients with such a joint infection had a trauma.
We find causation was not proven, i.e., a preponderance of the medical evidence does not show that Sakinah’s fall caused osteo-myelitis of her hip. We pretermit discussion of whether the premises posed an unreasonable risk of harm.
The judgment is reversed.
REVERSED.

. The joint stipulation was $8,537.70, the judgment is $8,538.70. We note the Louisiana State Department of Health and Human Resources (DHHR) intervened to recover for services at Charity Hospital.

. Sakinah and Sidney Morris testified that the initial visit was February 15, 1986 and surgery was on February 17, 1986. Hospital records and the doctors' testimony indicate she went to the hospital on February 16 and underwent surgery on February 18.