553 So.2d 427 (1989)
Sidney MORRIS, Individually and on behalf of the Minor, Sakinah Morris
v.
ORLEANS PARISH SCHOOL BOARD.
No. 89-C-1319.
Supreme Court of Louisiana.
December 11, 1989.
Rehearing Denied January 18, 1990.
*428 Robert L. Rieger, Jr. and George M. Pierson, Baton Rouge, for applicant.
Janet Boles, Boles, Boles & Ryan, Baton Rouge, for appellee.
MARCUS, Justice.
On February 14, 1986, Sakinah Morris, a 12-year-old student at the Agnes Bauduit Elementary School in New Orleans, was running to a water fountain in the school yard during recess when she slipped on wet asphalt underneath the fountain. She fell on her right hip. Although she had never suffered hip problems before, she felt pain in her hip shortly after the fall. Two days later, her father brought her to Charity Hospital where a doctor diagnosed muscle strain and sent her home. She returned to the hospital after two more days of increasing pain. She then had a fever and limitation of motion in her hip. Drs. Charles Murphy and David Neirschwander diagnosed an infection in her right hip joint. They operated to drain the joint and remove the infected substance. Her wound was left open for two weeks and she was kept in traction for about three weeks after the operation. She developed a rash while she was in the hospital, but overall had a good recovery. On March 25, five weeks after the surgery, she was discharged from the hospital on crutches. About two weeks later, she got off the crutches and went back to school. However, she failed school that year. She actively plays sports despite pain in her hip when she runs. She has a four-to-five inch scar on her hip from the surgery.
On August 1, 1985, over six months prior to Sakinah's fall, the Orleans Parish School Board received a request to repair worn gaskets which were leaking water from the water fountain where Sakinah slipped. On December 6, 1985, more than two months before the fall, the school board recorded a second request regarding the same water fountain which "keeps running." This request came from a concerned parent and the school board entitled it a "Request for Emergency Repairs." Additionally, the head custodian at the Agnes Bauduit School was aware for three months before Sakinah's fall that this fountain was continuously stopped up and dripping. He attempted to repair it with a plunger. When that did not work, he turned the water off from a valve underneath the fountain. However, he found that the fountain still leaked when it rained. Cracks in the asphalt prevented the leaking water from flowing off freely. Therefore, on or about November 18, 1985, almost three months before the fall, he called the school board to say that he was sending a requisition for repairs via the principal's office. For safety reasons, he considered such a requisition to be an emergency request. Despite these requests, the school board did not work on the fountain until April 14-18, 1986, about two months after Sakinah fell.
Mr. Morris, individually and on behalf of his daughter, Sakinah, brought suit against the Orleans Parish School Board to recover damages for the negligence of the school board in causing the accident. The school board answered generally denying the allegations of plaintiff's petition. The State Department of Health and Human Resources intervened to recover medical expenses in the amount of $8,537.70. At trial, it was stipulated by the parties that in the event of a favorable judgment for plaintiff, the intervention in that amount would be recognized as part of the judgment. The trial judge rendered judgment in favor of Mr. Morris on behalf of his daughter, Sakinah, in the amount of $40,000 and individually for $8,538.70 for medical expenses due Charity Hospital and against the Orleans Parish School Board. Because the judge found Sakinah ten percent comparatively negligent, he reduced the awards by ten percent. The school board appealed. The court of appeal reversed, finding that plaintiff failed to prove that Sakinah's fall caused the infection in her hip joint. Whether the school board was negligent was pretermitted.[1] Upon plaintiff's application, we granted certiorari *429 to review the correctness of that decision.[2]
The issues presented for our determination are (1) whether the school board was negligent; (2) if so, whether Sakinah's fall caused the infection in her hip joint; and (3) if so, whether the damages awarded by the trial judge were proper.
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.
Article 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Accordingly, under these articles the elements of a cause of action are fault, causation, and damage. The conduct of which the plaintiff complains must be a cause-in-fact of the harm. After determining causation, the court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles. St. Hill v. Tabor, 542 So.2d 499 (La.1989).
In the instant case, Sakinah testified that there was a "lot of water" underneath the water fountain where she slipped and fell. She fell during recess after having lunch and running out to the school yard. Thus, her fall occurred at a time and place in which students are likely to run and could easily slip on wet asphalt. Under the circumstances, we find that the school board's conduct in allowing these conditions to exist constituted a contributing cause of Sakinah's fall. "Defendant's conduct need not be the sole cause of the harm but it must be a necessary antecedent. Stated another way, if plaintiff can show he probably would not have suffered damages, absent defendant's conduct, he has carried his burden of proving cause in fact." Gibson v. Faubion Truck Lines, Inc., 427 So.2d 68, 71 (La.App. 4th Cir.1983). Accordingly, we find that the school board's conduct was a cause-in-fact of the fall.
Next, we consider the extent of the school board's duty to its students. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton on the Law of Torts (5th ed. 1984). "The standard of care for school teachers and administrators is that of a reasonable person in such a position acting under similar circumstances. Reasonable care includes protecting against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds." Capers v. Orleans Parish School Board, 365 So.2d 23, 24 (La.App. 4th Cir.1978). "In considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person." Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979). We find that the school board acted unreasonably in failing to repair the fountain despite receiving three requests to fix it during the six months before the fall and in allowing the elementary school children to run on the wet asphalt during school hours. By this conduct, in view of the students' age and propensity to run in the school yard, the school board breached its duty to act reasonably and to guard against unreasonable risks of injury or harm to the students.
We find that the particular risk, that one of the students would slip and fall on the wet asphalt while running towards the fountain during school hours, was clearly within the scope of the duty. The *430 main purpose of repairing a leaking water fountain on school grounds is to prevent students from slipping and falling on the wet surface underneath the fountain.
Accordingly, we conclude that the record fully supports the finding of the trial judge that the school board was negligent.
We turn next to the issue of whether Sakinah's fall caused the infection in her hip joint. Three doctors testified on this issue: Dr. David Neirschwander, a resident in orthopedics; Dr. Charles Murphy, an orthopedic surgeon; and Dr. Gordon Nutdik, an expert in orthopedic surgery. While the plaintiff has the burden of proving causation by a preponderance of the evidence, it is only necessary that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Townsend v. State, Through the Department of Highways, 322 So.2d 139 (La.1975).
Dr. Neirschwander testified that when he saw Sakinah in the emergency room on February 18, 1986, she had complaints of fever and progressive right hip pain. He examined her and found that she had a significant fever and limitation of motion in her right hip. An aspiration of her hip was performed to remove fluid, which was tested by the lab and showed evidence of bacteria (staphylococcus aureus) and an elevated white blood cell count. This indicated that her right hip joint was infected. Drs. Neirschwander, Murphy, and Fletcher then operated to drain the infected fluid from the hip joint. After the operation, Dr. Neirschwander saw her daily while she was in the hospital. He found that she had a good recovery. In testifying as to whether the trauma caused the infected hip joint, he stated that trauma causes blood to pool at the location of the trauma. The pooled blood then supplies an environment for transient bacteremia[3] to localize, flourish, and form an infection. This happens to a certain percentage of people with bacteremia who receive a trauma. He further stated that "in all probability" the trauma aggravated her condition.
Dr. Murphy testified that on February 18, 1986, he also treated Sakinah, diagnosed the infection in her right hip joint, and operated to remove the infected substance. The infecting bacteria was staphylococcus aureus. After the operation, Dr. Murphy saw Sakinah on a routine basis while she was in the hospital. He concluded that her post-surgery recovery went well despite a rash which may have resulted from her antibiotics. He testified, as did Dr. Neirschwander, that trauma such as Sakinah sustained in her fall can lead bacteria in the blood stream to accumulate and form an infection at the site where the trauma causes bleeding. Dr. Murphy further testified that other factors, such as an altered immune status, can influence the development of infections.
Dr. Nutdik testified that while thirty-three percent of patients with infected hip joints suffer trauma prior to developing their infections, medical research has not produced a definitive statement as to whether joint infections are caused by trauma in every case. But Dr. Nutdik agreed with Drs. Neirschwander and Murphy that trauma could cause blood stoppage leading to bacterial growth and infection.
All three doctors testified that trauma such as Sakinah received in her fall can trigger an infection by creating pooled blood where bacteria flourish. The facts indicate that Sakinah had no history of hip problems or infections prior to her fall. Shortly thereafter, she had pain and fever. The infection in her hip joint developed within four days of the fall. After surgery, she overcame the infection and recovered well. There is no evidence of subsequent infections. Based upon the evidence, we find that plaintiff proved that Sakinah's fall caused the infection to develop and grow in her hip joint. The trial judge was not clearly wrong in so holding. The court of appeal erred in finding otherwise.
*431 Finally, we consider whether the amount of damages awarded by the trial judge was proper. A review of the record convinces us that the trial judge did not abuse his much discretion in making the award of damages. La.Civ.Code art. 1999; Reck v. Stevens, 373 So.2d 498 (La.1979).

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the district court is reinstated.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
NOTES
[1] 544 So.2d 440 (La.App. 4th Cir.1989).
[2] 547 So.2d 354 (La.1989).
[3] Bacteremia are bacteria in the blood stream which result from a variety of events including brushing one's teeth.