NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1035

EARL MCCARTHY, SR.

VERSUS

CITY OF OPELOUSAS, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-C-2626-B
HONORABLE GERARD CASWELL, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Van H. Kyzar, Judges.

AFFIRMED.

Gloria A. Angus
Angus Law Firm, LLC
P. O. Box 2337
Opelousas, LA 70571
Telephone: (337) 948-8800
COUNSEL FOR:
     Plaintiff/Appellant - Earl McCarthy, Sr.

**Travis J. Broussard**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505-1308**
**Telephone: (337) 233-0300**
**COUNSEL FOR:**
   **Defendant/Appellee - City of Opelousas**

**THIBODEAUX, Chief Judge.**

Earl McCarthy, Sr. brought this tort action against the City of Opelousas (hereafter "the City") after a tree located at North City Park split and fell on his truck and, allegedly, on his person. The trial court found that the defective condition of the tree caused damage to the truck, but that Mr. McCarthy failed to meet his burden of proof that he sustained physical injury. Mr. McCarthy was awarded $5,073.66 in property damage. Mr. McCarthy was not awarded personal injury damages. Additionally, the trial court awarded $2,500 in expert witness fees. Mr. McCarthy now appeals. We affirm.

I.

**ISSUES**

This court must determine:

(1)     whether the trial court erred in determining that the plaintiff was not credible, and that another witness was credible when no objective evidence supported the testimony;

(2)     whether the trial court erred in its denial of specific and general damages; and,

(3)     whether the trial court abused its discretion when it only awarded a portion of the expert witness fees.

II.

**FACTS AND PROCEDURAL HISTORY**

On June 8, 2012, Mr. McCarthy went to North City Park in Opelousas to dry off his freshly-washed pickup truck. Mr. McCarthy parked under a Bradford pear tree and started to dry off his truck when a large limb of the tree fell onto his

truck. It is disputed whether the tree limb also fell on Mr. McCarthy and whether he was inside or outside of the truck when the tree limb fell.

Mr. McCarthy claims he was standing outside of the truck when the limb fell and struck him on the right shoulder, pinning him between the tree and the truck, forcing him to crawl on his stomach to free himself. He was driven by his wife to Opelousas General Hospital for emergency treatment and was given pain medication. On June 10, 2012, Mr. McCarthy returned to Opelousas General Hospital because he was still in pain and experiencing weakness. Mr. McCarthy also sought treatment from Dr. Bozzelle in Lafayette before switching to Dr. Thomas at Wellness in Opelousas because it was closer to home. He saw Dr. Thomas and Dr. Bozzelle between his regular checkups with his family doctor, Dr. White.

Mr. McCarthy sued the City. At trial, Mr. McCarthy's counsel did not call any of Mr. McCarthy's physicians to testify about his injuries. The trial court was presented with bills from the emergency room that did not specify treatment, and chart notes from Mr. McCarthy's various doctors' appointments which contained contradictory reports of Mr. McCarthy's accident. In Dr. Thomas's notes, he says Mr. McCarthy was hit by the tree while standing by his truck. Conversely, Dr. White wrote that Mr. McCarthy became injured trying to get out of the way as Mr. McCarthy moved abruptly when the tree fell on his truck.

During the trial, witness testimony contradicted Mr. McCarthy's own testimony, as well as the testimony of other witnesses. Mr. McCarthy's counsel was able to establish that the tree had a defective condition for which the City had constructive notice, that the condition of the tree posed an unreasonable risk of harm and was the cause-in-fact of the branch breaking and causing damages. This

2

was established through the testimony of park employees and expert arborist, Robert Thibodeaux.

The court heard testimony from Mr. McCarthy's two daughters; Marlin Jones, a former park employee; Romalis Thomas, an Opelousas Police Department Detective; Tommy Brown, a park employee; and the park supervisor, Clarence Barrow.

### Marlin Jones's Testimony

Marlin Jones testified that he was at the park on the day of the accident working in the weight room. Mr. Jones testified that while he was sitting in his own vehicle parked about one-hundred and fifty feet away from Mr. McCarthy's truck, he saw the tree fall down through his rearview mirror. He stated that Mr. McCarthy was standing outside his truck and was toward the back side of his truck when the tree fell. Mr. Jones testified that after the tree fell, he got out of his vehicle, saw Mr. McCarthy's feet on the ground, became nervous because he did not know whether Mr. McCarthy was dead or alive, and ran into the weight room to call Mr. McCarthy's son, Carl. Mr. Jones testified that after the tree fell, Mr. McCarthy was under the tree with his feet pointing up. However, Mr. Jones does not recall being able to reach Carl so he stayed in the gym, and went outside after a few minutes. After briefly returning to the weight room, Mr. Jones testified that the tree limb had been removed and Mr. McCarthy was sitting in his truck and his son was talking to him. No phone records were submitted into evidence, and Carl did not testify at trial.

The trial court found Mr. Jones's testimony lacked credibility. Mr. Jones said he withheld information from the attorney for the City because he did

not want to get involved. Additionally, the trial court did not believe Mr. Jones would not either immediately call 911 for help or call a park supervisor. The trial court further noted that Mr. Jones said that the tree had been removed when he came back out of the weight room, even though the limb had to be removed by heavy equipment which would have taken longer than a few minutes. The trial court found that Mr. Jones's testimony contradicted the testimony of Mr. McCarthy and Tommy Brown about Mr. McCarthy's location when the tree fell and how he got out from under the tree.

### *Earl McCarthy, Sr.'s Testimony*

Mr. McCarthy testified that he washed his car, went home to get a shammy, and then went to the park and started drying off his truck. As he was drying off his windshield near the driver's side's mirror, suddenly the tree limb hit him on the back of the shoulder, knocking him onto his stomach and the ground before he pushed up with his feet, taking his hand and dragging himself from the right side of his left front tire and crawling out. Mr. McCarthy claimed that he sustained injuries to his neck, back, and shoulder, causing him to seek medical treatment at the emergency room twice, in addition to going to Dr. Bozzelle and Dr. Thomas for treatment. Mr. McCarthy went to Dr. White for treatment unrelated to the accident.

The trial court found that Mr. McCarthy's testimony was not credible because it could not reconcile Mr. McCarthy saying he crawled on his stomach with Mr. Jones saying he saw Mr. McCarthy with his feet up. Mr. McCarthy also testified that when he got up he saw a park ranger, Jerome Richardson, who he described as crippled. Mr. McCarthy asked to use Mr. Richardson's phone to call

his wife.  Shortly thereafter, he saw a few other people, including Mr. Jones, in the area.

### *Detective Romalis Thomas's Testimony*

The court also heard testimony from Detective Romalis Thomas.  Det. Thomas was working off-duty detail at the park's pool when dispatch notified him of the incident, and he responded.  Det. Thomas spoke to Mr. McCarthy who said he had been standing by his truck when the tree fell and hit him and the truck.  Det. Thomas filled out an accident report at the scene and included photos (Exhibit "P-16") that he took at the time of the incident, prior to the removal of the tree.  Det. Thomas testified that he did not interview any witnesses at the scene and only spoke to Mr. McCarthy and possibly to the responding EMS but could not recall if he had spoken to the EMS.

Mr. McCarthy informed Det. Thomas that the tree fell on him and his truck.  Det. Thomas noted that he found it strange that he said the tree fell on him because "he looked well."  Det. Thomas admitted he originally thought the whole tree had fallen on Mr. McCarthy when he received the dispatch; however, upon arrival at the scene, he learned it was only the large limb and branches. Furthermore, Det. Thomas opined that Mr. McCarthy looked fine.  He qualified his opinion that he was not a doctor and, therefore, could not truly assess Mr. McCarthy's pain.  Det. Thomas did not see any debris, abrasions, scrapes, or cuts on Mr. McCarthy.

The trial court found Det. Thomas was a credible witness.  In its Reasons for Judgment, the trial court noted that based on the photographs, and Det. Thomas noting that Mr. McCarthy had no tears to his clothing, and was not

5

scraped or bleeding, the trial court found it difficult to believe that a limb of that size could fall on someone, and the individual could belly-crawl out and have no dirt on the individual's clothing or hands.

### *Tommy Brown's Testimony*

Tommy Brown, a park employee who was mowing the lawn at the park on the day of the accident, testified that Mr. McCarthy was sitting in his truck at the time of the accident and he helped Mr. McCarthy out of the truck. Mr. Brown testified that he was putting away the riding mower in the shed around 3:25 p.m. or 3:30 p.m. prior to when he usually leaves the park at 3:45 p.m. As Mr. Brown put away the mower, he turned to see the tree fall on a truck. He then locked the shed and proceeded to the truck where he found Mr. McCarthy inside the truck on the driver's side. Mr. Brown told Mr. McCarthy that he would have to get out on the passenger side of the truck. Mr. Brown testified that he aided Mr. McCarthy in getting out of his truck by lifting the limbs with one hand and opening the truck's passenger door with his other hand. After Mr. McCarthy got out of the passenger side of the truck, he went to the back of the truck and wanted to make a call but could not dial the phone. Mr. McCarthy handed Mr. Brown his phone to assist in making the call. No phone records were submitted into evidence to corroborate the phone call. No other witnesses verified this, and Mr. McCarthy's testimony did not match this account. Notably, Mr. Brown reports to Jerome Richardson at North Park. Mr. Brown did not make a statement to police nor did he remain at the scene.

### *Additional Testimony and Trial Court Findings*

Mr. McCarthy's daughters also testified at trial, and the trial court found them to be credible witnesses but did not rely on their testimony. The trial court noted that the daughters' testimony only established that they were at home with their mother and Carl when someone called to tell them something happened at the park. Carl took off running while their mother gathered towels, not knowing whether Mr. McCarthy would be bloody.

Mr. McCarthy's daughters noted that their father no longer could lift large feed bags to feed his hogs and stopped playing with his grandchildren and volunteering at church like he had before the incident.

Mr. McCarthy did not call any doctors to testify at trial. In the record are treatment notes from the chiropractor, and Mr. McCarthy's family doctor, Dr. White. The chiropractor's notes that Mr. McCarthy had issues with range of motion on April 1, 2013, and again on April 3, 2013, but Mr. McCarthy's counsel notes that Mr. McCarthy obtained relief on April 2, 2013. Further, the notes from Dr. White reflect that Mr. McCarthy had full range of motion in June 2012.

The trial court described how there was a "lack of detailed medical records, covering the emergency room visits, that Mr. McCarthy said he had, [and it] would have been nice to have those detailed, at least the detailed billing to show me what was done, but more importantly, the actual records." The trial judge further noted that he was not provided with the records from the EMS that are created when they respond but do not transport a patient.

The trial court wrote that it did not think that Mr. McCarthy could establish notice. However, Mr. Brown testified he recognized the tree rot from the photos even though he had not seen it beforehand. The trial court determined that

this testimony established constructive notice. After expert arborist, Mr. Thibodeaux testified, the trial court found that "the defect in the tree was the cause-in-fact of that branch breaking, which ultimately fell on Mr. McCarthy's vehicle, causing damages." Accordingly, the trial court awarded $5,073.66 to Mr. McCarthy in property damages with legal interest for the cost of vehicle repair of $3,785.36 and the cost of the rental car of $1,288.30.

However, the trial court found that Mr. McCarthy failed to meet his burden of proof that he "received any physical injury as a result of this incident ...." The trial court reached this conclusion primarily on credibility determinations. The trial court did not find Mr. Jones to be a credible witness because it neither believed his testimony that Mr. McCarthy's toes were up nor did the trial court believe that the limb had been removed by the time Mr. Jones exited the weight room ten minutes after the tree had fallen. Additionally, the trial court did not find that Mr. McCarthy was a credible witness because his testimony that he belly-crawled was contradictory to Mr. Jones's testimony, to Det. Thomas's testimony that Mr. McCarthy looked unscratched and was not dirty, and to Mr. Brown's testimony that Mr. McCarthy was in his car when the tree fell. The contradictory testimony, coupled with the lack of medical evidence and physician testimony, led the trial court to conclude that Mr. McCarthy did not sustain physical injuries.

Subsequently, a hearing on a motion to tax costs of the expert fees of Mr. Thibodeaux and to award attorney fees was held on May 8, 2017. The trial court found there was no basis for attorney fees and awarded $2,500 in expert witness fees to Mr. Thibodeaux. Mr. McCarthy's counsel argued for attorney fees under La.R.S. 13:1511(A). However, the trial court noted that the statute cited by Mr. McCarthy's counsel was for property damaged during a taking and was

inapplicable to "general negligence or strict liability." Regarding expert witness fees, Mr. McCarthy's counsel submitted a bill from Mr. Thibodeaux referencing six invoices. No testimony to substantiate the six invoices or regarding how much time Mr. Thibodeaux spent preparing an expert report was introduced. The trial court found Mr. Thibodeaux was present in court to testify for one day and visited the site of the accident once.

III.

**STANDARD OF REVIEW**

"A court of appeal my not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993) (quoting *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. "The assessment of 'quantum,' or the appropriate damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review." *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74 (quoting *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993)). "The fixing of expert witness fees is within the discretion of the trial court which will not be disturbed by an appellate court in the absence of abuse of discretion." *Esté v. State Farm Ins. Companies*, 96-99, p. 14 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 859 (citing *State, DOTD v. Nelken*, 628 So.2d 1279 (La.App. 3 Cir.1993)).

IV.

## <u>LAW AND DISCUSSION</u>

First, this court must consider whether the trial court erred in its credibility determinations. The trial court found that Mr. McCarthy was not credible, and Mr. Brown was credible. Mr. McCarthy's counsel argues that the trial court used its credibility determinations to deny Mr. McCarthy an award for bodily injuries. Mr. McCarthy asserts that there is objective evidence to support that he sustained injuries. The City argues that the trial court did not err in its credibility determinations because there was conflicting testimony from Mr. McCarthy, Mr. Jones, and Mr. Brown. Mr. McCarthy also alleges that the trial court erred in finding Mr. Brown was credible when there was no objective evidence to support Mr. Brown's testimony. We disagree.

Under the two-part test established in *Arceneaux v. Domingue*, the appellate court must first "find . . . there is a reasonable factual basis for the finding of the trial court, and . . . further determine that the record established that the finding is not clearly wrong (manifestly erroneous)." *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987) (quoting *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978)). "[T]he jury or trial judge may, and should, assess the credibility of experts who testify at trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous." *Guidry v. Davis*, 382 So.2d 250, 253 (La.App. 3 Cir. 1980) (citing *Green v. State, Southwest Louisiana Charity Hosp.*, 309 So.2d 706 (La.App. 3 Cir. 1975); *Monette v. Aetna Cas. Sur. Co.*, 352 So.2d 423 (La.App. 3 Cir. 1977)).

In *West v. Williams*, 30,842, pp. 3-4 (La.App. 2 Cir. 8/19/98), 717 So.2d 1224, 1225, the second circuit held that the plaintiff involved in a low-impact car accident in a grocery store parking lot did not meet her burden that the "injuries [she] complained of were caused by the fault of the defendant." The second circuit found that the trial court record "amply support[ed] the trial court's factual and credibility assessments." *Id.* The plaintiff provided testimony that was inconsistent with her daughter's testimony, her own statement made to the investigating police officer, and with the notes taken by her chiropractor. *Id.*

Additionally, in *Young v. Allstate Ins. Co.*, 45,512 (La.App. 2 Cir. 8/8/10), 47 So.3d 595, the second circuit affirmed the trial court's judgment in favor of the defendant in a car accident, finding that the plaintiffs' testimonies contradicted each other on several points and the trial court was not clearly wrong. The plaintiffs argued that the defendant's testimony was "self-serving" and "uncorroborated." *Id.* at 597. The second circuit maintained that the trial court was in the better position to make credibility determinations, especially because only the parties testified in court and "everything else was depositions, photos, or other filings." *Id.* at 598.

In this case, we find no error in the trial court's credibility determinations. Like the plaintiff in *West*, Mr. McCarthy's testimony here was inconsistent with nearly all other testimony about his location when the tree fell, and how he extracted himself from under the limb or from inside the cab of the truck. Additionally, the trial court found Mr. Brown's testimony that Mr. McCarthy was inside the truck was credible along with Det. Thomas's testimony that Mr. McCarthy looked clean, unmarked, and uninjured.

11

Like the plaintiffs in *Young*, Mr. McCarthy alleges that Mr. Brown's testimony was uncorroborated and self-serving as a park employee for the City. However, the trial court found that Mr. Brown established the tree was rotten from photos, which clearly provided no benefit to the City's defense, and had no reason to lie about whether Mr. McCarthy was inside or outside of the truck. The trial court in its discretion found that Mr. Brown was credible when he testified that Mr. McCarthy was inside his truck when the tree fell, rather than outside of the truck as Mr. McCarthy and Mr. Jones recounted. However, the trial court determined that there was a lack of evidentiary support for Mr. McCarthy's bodily injuries. Further, the trial court found that the medical records provided by Mr. McCarthy impeached Mr. McCarthy's own testimony because there were conflicting descriptions about how he sustained the injuries. The trial court found that Mr. McCarthy was not credible and found that Mr. McCarthy did not sustain physical injuries. The photos and other evidence support the trial court's credibility determinations. We find the trial court was not clearly wrong when it found Mr. McCarthy was not credible and Mr. Brown was credible regardless of objective evidence supporting Mr. Brown's testimony.

We also find that the lack of medical records and physician testimony established an adverse presumption that Mr. McCarthy had not sustained injuries. "[W]hen a litigant destroys, conceals, or fails to produce evidence within his or her control, it gives rise to an adverse presumption that had the evidence been produced, it would have been detrimental to the litigant's case." *Allstate Ins. Co. v. Ford Motor Co.*, 00-710, p. 4 (La.App. 3 Cir. 11/2/00), 772 So.2d 339, 342. The medical records provided were emergency room bills without chart notes which could have established injury. The chiropractor records that were introduced

12

contradicted the records from Dr. White. No doctors testified at trial to corroborate Mr. McCarthy's testimony. If Mr. McCarthy's treating physicians had testified and/or if Mr. McCarthy provided more detailed medical records, it may have established Mr. McCarthy's injuries or shed light on discrepancies between the physicians' chart notes.

Next, this court must address whether the trial court erred in its denial of specific damages and general damages. Mr. McCarthy alleged that the trial court abused its discretion in its denial of personal injury damages because the trial court found the City was negligent. Mr. McCarthy contends that he is discharged of the burden of proof, suggesting that the applicable legal presumption is that if Mr. McCarthy was in good health before the accident and the condition appears or manifests thereafter, then the causal connection between the accident and injury is established, provided that medical evidence supports the connection. Mr. McCarthy cites *Morris v. Orleans Parish School Bd.*, 553 So.2d 427 (La.1989) and *Lucas v. Insurance Company of North America*, 342 So.2d 591, 596 (La.1977) to support this presumption. We disagree.

In *Morris*, the Louisiana Supreme Court reversed the court of appeal and reinstated the trial court's judgment, finding the trial court did not abuse its discretion in making the damage award. *Morris*, 553 So.2d 427. The supreme court found that the school board was liable for a twelve-year-old student's fall on wet asphalt under a water fountain on school property. *Id.* The supreme court found the trial court correctly determined: (1) the school board's conduct was the cause-in-fact of the fall; (2) the school board owed a duty to the student, which was breached; and (3) the school board was negligent. *Id.*

Mr. McCarthy also cites *Lucas*, which established the legal presumption for the causal connection between injury and accident in workers' compensation cases. This presumption is inapplicable here because *Lucas* involves the statutorily and jurisprudentially established presumption for workers' compensation-related injuries.

> Louisiana Civil Code Article 2315(A), provides:
>
> "Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it."

Under La.Civ.Code art. 2316, "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." Additionally, under La.Civ.Code art. 1999, "When damages are insusceptible to precise measurement, much discretion shall be left to the court for the reasonable assessment of the damages."

In *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, the Louisiana Supreme Court reinstated the award of $1,500 in medical expenses, finding the jury did not abuse its discretion when the jury found that the pharmacy's conduct was the legal cause of the minor-plaintiff's injuries when the pharmacy incorrectly filled the Prozac prescription which led to the minor's overdose. The lower court found that the defendant was "at fault for the plaintiff's injuries and liable to him for his medical expenses incurred yet has declined to make any award at all for general damages." *Id.* at 74. The supreme court upheld the award of medical expenses, while acknowledging that courts of appeal recognize "that under certain circumstances the evidence of record supports both an award of medical expenses and a concurrent denial of general damages." *Id.* at 75.

In *Olivier v. Sears Roebuck & Co.*, 499 So.2d 1058 (La.App. 3 Cir. 1986), this court held that the trial court did not abuse its discretion when it found that the plaintiff failed to meet her burden of proof establishing a new back injury from an automobile accident. We found that the trial court did not abuse its discretion in awarding $150 to the plaintiff for unspecified damages, possibly for a checkup following the accident, while denying damages, citing a lack of objective evidence proving injury. The testimony provided by the plaintiff's physicians contradicted the testimony of the plaintiff. Additionally, we upheld the award for property damages of $1,100 for repair of the pickup truck.

In this case, we find that the trial court did not abuse its discretion in its denial of general or specific damages. In *Wainwright*, the supreme court found fault and causation but did not award damages even though the plaintiff was injured. Here, however, the trial court did not find that Mr. McCarthy was injured even though the trial court found that the City's tree was the cause-in-fact for the damage to Mr. McCarthy's truck. Although the trial court found that the defective tree was the cause-in-fact for the property damage, the failure to establish bodily injury precluded the awards of general and specific damages.

Similar to the plaintiff in *Olivier*, Mr. McCarthy lacked objective evidence of injury. In *Olivier*, the plaintiff was unable to establish injury even with physician testimony—which was noted as contradictory. Here, Mr. McCarthy did not have a single physician testify about his medical treatment, presenting an even weaker case than the plaintiff in *Olivier*. Accordingly, we hold that the trial court did not abuse its discretion in its denial of general and specific damages.

Finally, this court must review whether the trial court abused its discretion in awarding only a portion of expert witness fees. Mr. McCarthy asserts

15

that arborist, Mr. Thibodeaux, was only awarded $2,500 but was owed $6,000. Mr. McCarthy cites La.R.S. 13:3666 to support their contention that the arborist was entitled to $6,000. The City argues that Mr. McCarthy only provided a letter or bill from Mr. Thibodeaux which referenced six invoices without a breakdown of services to show how the services were billed.

Louisiana Revised Statutes 13:3666, in pertinent part, provides:

A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make a scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court with reference to the value of time employed and the degree of learning or skill required.

B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:

(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside of the presence of the jury, the court shall determine the amount thereof and include the same.

In *Orea v. Scalian*, 32,622 (La.App. 2 Cir. 1/26/00), 750 So.2d 483, the second circuit held that the trial court did not abuse its discretion in awarding a portion of the expert witness fees sought for an automobile repairman in a car accident case because the plaintiffs only requested recovery for seven hours of preparation despite claiming that the expert spent over nine hours preparing and testifying. The court determined the particular witness was adequately compensated based on the trial court's analysis of the expert's affidavit detailing time spent examining the truck and at the crash site, in court, and travel time.

Here, the trial court awarded Mr. Thibodeaux for one site visit, preparation of the expert report, and the half-day he spent testifying in court. The invoices submitted did not provide a detailed breakdown to suggest more preparation. Moreover, there was no affidavit from Mr. Thibodeaux to support that his services cost $6,000. We uphold the trial court's award of $2,500 in expert witness fees to Mr. Thibodeaux, finding the trial court did not abuse its discretion.

## V.

## <u>CONCLUSION</u>

Based upon the foregoing principles, this court finds the trial court was not manifestly erroneous in its credibility determinations. Furthermore, this court affirms the trial court judgment denying specific and general damages and upholds the expert witness fee of $2,500. Costs of this appeal are assessed to the Appellant, Earl McCarthy, Sr.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.